IRVING KESTER AND GEORGE W. CROSIER, PLAINTIFFS, v. THOMAS J. REYNOLDS, DEFENDANT.

*Contract to ship potatoes — delivery on cars — previous payment — Demand of delivery — what excuses — Interpretation of contracts, by course of dealing.*

A contract by B. to put potatoes in A.'s sacks and ship them to A.'s residence implies that B. is to deliver them on board the cars for A., to be transported to A.'s residence, without previous payment of their price by A.

In such case the sending by B. to A. of the sacks empty, and proof of the sale of the potatoes in question to another, excuses A. from demanding the potatoes and tendering the price thereof.

The course of dealing between contracting parties is admissible to aid in the interpretation of their contracts.

MOTION for a new trial on exceptions ordered to be heard in the first instance at the General Term.

This action was brought for an alleged breach of contract by the defendant, in failing to deliver certain potatoes. The contract is expressed in the following letters:

> OFFICE OF T. J. REYNOLDS,
> DEALER IN GRAIN, SEEDS AND COUNTRY PRODUCE.
> LIVONIA STATION, N. Y., *April* 14, 1874.

IRVING KESTER & Co. :

GENTS. — Yours at hand, and in reply would say, I think I could put you a load or two of peachblows on cars here at eighty cents per bushel. If you want them please let me hear.

The apples were shipped from Genesee, and I have waited therefor for shipping receipt, and will forward it at once when received.

> Yours truly,
> T. J. REYNOLDS.

P. S. — I will buy potatoes on commish for you if you want.

> T. J. R.

> BUFFALO, *April* 15, 1874.

T. J. REYNOLDS :

Yours of the fourteenth received, and we note all you say about potatoes ; we will take a car load or two of choice peachblow potatoes at eighty cents on cars at your station in our sacks ; on receipt of this let us know whether you will make it one or two car loads, and we will send sacks at once ; we want the potatoes as soon as possible.

> Yours, etc.,
> IRVING KESTER & CO.

> OFFICE OF T. J. REYNOLDS,
> DEALER IN GRAIN, SEEDS AND COUNTRY PRODUCE.
> LIVONIA STATION, N. Y., *April* 16, 1874.

IRVING KESTER & Co., *Buffalo, N. Y.* :

GENTS. — Yours at hand, and in reply would say you may send me sacks enough for one car, and then I will let you know in reference to the other. I will sell you the seed beans at twelve shillings here. I have none of your sacks, I shipped you three or four sacks more than I received from you.

> Yours truly,
> T. J. REYNOLDS.

BUFFALO, *April* 17, 1874.

T. J. REYNOLDS:

Yours of the sixteenth received, we sent you 130 sacks for potatoes. Please be careful and send nothing but prime stock (peachblows). Ship as soon as possible, as follows:

Irving Kester & Co., care C. M. Shattuck, agent Lake Shore R. R., Buffalo, N. Y.

Yours, etc.,

IRVING KESTER & CO.

BUFFALO, *May* 1, 1874.

T. J. REYNOLDS:

Please inform us how soon you will be able to ship the car of potatoes, we want them as soon as you can ship them.

Yours, etc.,

IRVING KESTER & CO.

OFFICE OF T. J. REYNOLDS,
DEALER IN GRAIN, SEEDS AND COUNTRY PRODUCE.
LIVONIA STATION, N. Y., *May* 2, 1874.

IRVING KESTER & Co.:

GENTS. — Yours of the first inst., at hand. In reply we have the potatoes bought and will ship as soon as drawn in.

In reference to buckwheat, have none on hand. If you will quote me prices, will try and supply you if possible.

Yours truly,

T. J. REYNOLDS.

The plaintiff's counsel offered to show that in prior dealings between the plaintiffs and defendant, when plaintiffs had made similar purchases of defendant, after defendant had shipped the potatoes, he would draw on plaintiffs for the price. On objection by defendant this evidence was excluded. The evidence showed that the potatoes mentioned in the above letters were sold by the defendant to one Comstock, and that the sacks were sent on to defendant by the plaintiffs and returned empty.

*H. C. Day*, for the plaintiffs. By the terms of this contract it was a condition precedent that the defendant should sack the potatoes in plaintiffs' sacks, and place them upon the cars before the

plaintiffs were obliged to pay. (*Crist* v. *Armour*, 34 Barb., 378.) The law neither does nor requires idle acts; nor, on the principle of this maxim, will the law require individuals to bring suits or do other acts which will be fruitless. (*Loomis* v. *Tifft*, 16 Barb., 544.) A demand is excused when compliance therewith is impossible. (*Schroeder* v. *Hudson R. R. Co.*, 5 Duer, 62.) It is a cardinal rule in the interpretation of every contract to read it in the light of surrounding circumstances. (*Blossom* v. *Griffin*, 3 Kern., 569; *Waldron* v. *Willard et al.*, 17 N. Y., 466; 1 Greenl. on Ev., § 277.)

*Nash & Sutherland*, for the defendant. Where no time is agreed on for payment, the delivery and payment are to be simultaneous acts. (*Chapman* v. *Lathrop*, 6 Cow., 110–113; *Coonley* v. *Anderson*, 1 Hill, 519–522; *Porter* v. *Rose*, 12 Johns., 209–212.) The sale being for cash, attendance at the place of delivery by the purchaser, and readiness to pay for and receive the property at that place, must be proved before a recovery can be had. (*Coonley* v. *Anderson*, *supra*; *Bronson* v. *Wiman*, 8 N. Y., 182–188; *Cook* v. *Ferral*, 13 Wend., 285–287; *Clark* v. *Dales*, 20 Barb., 42, 61–65; *Topping* v. *Root*, 5 Cow., 404; *Et vide Cornwall* v. *Haight*, 8 Barb., 327; S. C., reversed on other grounds, 21 N. Y., 462, but this doctrine affirmed at p. 465.) Nothing but an unqualified refusal, by word or deed, on the part of the vendor, will relieve the purchaser from this obligation. (*Dana* v. *Fiedler*, 1 E. D. Smith, 463; *Bunge* v. *Koop*, 5 Robt., 1; *Wheeler* v. *Grasia*, id., 280; 40 N. Y., 584.) Mere neglect to perform will not suffice, nor will a declaration to a third person by the vendor that he will not be able to deliver. (*McDonald* v. *Williams*, 1 Hilt., 365, 366.) Parol evidence is inadmissible to vary the plain intendment of the contract, as shown by the letter. (*Baker* v. *Higgins*, 21 N. Y., 397.)

SMITH, J. :

The nonsuit, we think, was erroneously granted. No time was fixed for the delivery of the potatoes, and the plaintiffs could not have been expected to be at Livonia station at any particular time to receive and pay for them. The parties, I think, did not contemplate payment at that place. The defendant was to put the potatoes into the plaintiffs' sacks and ship them by the railroad to

Buffalo, where the plaintiffs resided. In the letter of defendant, dated the second of May, the defendant wrote the plaintiffs that "he had the potatoes bought, and would ship them as soon as brought in." This implies that he was to ship or deliver them on board the cars for the plaintiffs, to be transported to Buffalo without previous payment. Nothing was said about payment, and it is perfectly clear, I think, that neither party expected payment to be made, until the potatoes were received at Buffalo.

Delivery to the carrier selected by the plaintiffs was a delivery to them, and that was necessarily to precede the payment. Payment and delivery were not to be contemporaneous acts. The defendant had had, previously, dealings with the plaintiffs, and proposed to send them the potatoes without exacting prepayment, trusting to their credit and responsibility. Doubtless, he would have had the right to stop the potatoes *in transitu*, after delivery on board the cars, upon the insolvency of the vendees, or exact payment at Buffalo before they reduced them to actual possession. But he was bound to do the first act. He was bound to put the potatoes into plaintiffs' sacks, and deliver them to the carrier for shipment to them at Buffalo. The sending back their sacks empty, coupled with proof of the sale and delivery of the potatoes purchased and put into them, to Comstock, was a breach of the contract on the defendant's part, and a refusal to fulfill the same, and in any view excused the plaintiffs from the necessity, if any such ever existed, of demanding the potatoes and tendering the price. It was error, also, to refuse to allow the plaintiffs to show the course of dealing between them and the defendant. Extrinsic facts of this kind are always admissible to aid in the interpretation of contracts, and what is rationally and naturally inferable, or to be implied as to the understanding and intent of the parties at the time of the making of the contract, should be deemed part of it. The nonsuit should be set aside, and a new trial granted upon the usual terms.

GILBERT, J., concurs. MULLIN, P. J., dissents in a written opinion.

New trial granted, with costs to abide event.